IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00213-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

**MATTHEW VERNON,**

       **Defendant.**

---

**OBJECTIONS/CLARIFICATIONS TO
THE PRESENTENCE INVESTIGATION REPORT (PSIR) [DOC. 30]**

---

MR. MATTHEW VERNON, by and through his attorney, Assistant Federal Public Defender Timothy P. O'Hara, hereby submits the following objections/clarifications to the PSIR [Doc. 30].

**OBJECTIONS THAT IMPACT THE UNITED STATES
SENTENCING COMMISSION GUIDELINE (USSG) RANGE**

Paragraph 17, 23: Mr. Vernon first objects to the probation department's calculation of the drug amount in the present case.  Additionally, Mr. Vernon objects to the inclusion of an amount of methamphetamine found in a vehicle outside of Mr. Vernon's residence as constituting relevant conduct in the present case.

    1) The probation department included the following narcotics in the guideline calculation:

        a) 600 grams of heroin (found on a shelf in a closet of the home),

        b) 41 grams of heroin (found in the master bedroom), and

> c) 39.4 grams of methamphetamine (found in a vehicle outside of Mr. Vernon's residence).

*See* Doc. 30 at ¶¶17 & 23.  As noted in the Plea Agreement, however, the amounts of heroin recovered in Mr. Vernon's residence were approximations. *See* Doc. 24 at p. 7. The actual amounts that were tested by the laboratory were:

> a) 0.59 kg +/- .0.03 kg of heroin = 590 grams[1] (found on the shelf),
>
> b) 30.38 grams of heroin (found in the master bedroom), and
>
> c) 12.718 grams + 22.888 grams = 35.606 grams of methamphetamine (found in a vehicle outside of Mr. Vernon's residence).

*See* Attachment A – Laboratory Report from the Metro Crime Laboratory.  The approximate amounts listed in the Plea Agreement (as well as the PSIR) likely include the weight of the packaging materials.

But based on the amount of narcotics confirmed and tested by the Metro Crime Laboratory, even assuming arguendo that the methamphetamine found in the vehicle were included in the calculation, it should not increase the base offense level under the guidelines beyond level 26.  *See* USSG §2D1.1(c)(6).  The correct calculation is as follows:

> 590 grams[2] of heroin = 590 kg of Converted Drug Weight
>
> + 30.38 grams of heroin = 30.38 kg of Converted Drug Weight
>
> <u>+ 35.606 grams of methamphetamine = 71.212 kg of Converted Drug Weight</u>
>
> 691.592 kg of Converted Drug Weight

---

[1] With the error margin, the weight of the sample could be as low as 560 grams.
[2] This quantity is subject to an error margin of +/- 30 grams.

When the error margin for the weight of the heroin is factored into the calculation, the amount of Converted Drug Weight (including the methamphetamine from the vehicle) is as low as 661.592 kg and most likely 691.592 kg, both below the 700 kg threshold necessary to move up to the next offense level in the guidelines.

  2) Additionally, the methamphetamine found in a vehicle outside of Mr. Vernon's residence should not be considered as relevant conduct in the guideline calculation.  In support of its inclusion of these narcotics, the probation department simply asserts that law enforcement seized "39.4 grams of methamphetamine in two clear plastic bags in the defendant's car," and then assessed an enhanced based offense level that included the recovered narcotics.  *See* Doc. 30 at ¶¶17 & 23 (applying a base offense level of 28).  While there is information to suggest that the vehicle where the narcotics were located was registered to Mr. Vernon, there is no further evidence linking Mr. Vernon to the narcotics.  In fact, there were two vehicles located and searched at the time of the execution of the search warrant: a Nissan Maxima in the driveway and a Nissan truck parked on the street.  The probation department has not included any statements made by Mr. Vernon in which he claims ownership/possession of the recovered narcotics.  The probation department provides no evidence that: Mr. Vernon recently used the truck, he knew that the narcotics were there, or he possessed them with the intent to distribute them.

  As discussed above, the amount of methamphetamine found in the truck was approximately 35.6 grams.  The parties stipulated in the Plea Agreement that the methamphetamine recovered by law enforcement "[i]n a vehicle outside the residence"

was not relevant conduct as defined under USSG §1B1.3.  *See* Doc. 24 at p. 7.  This is the correct conclusion.

At sentencing, the government bears the burden of proving by a preponderance of the evidence "the facts necessary to support an upward adjustment in the Guidelines range."  *See United States v. Padilla*, 793 Fed.Appx. 749, 755 (10th Cir. 2019) (unpublished) (citations omitted).  In order for the additional narcotics to be attributed to Mr. Vernon as relevant conduct under USSG §1B1.3, the Court must receive and accept sufficient, reliable evidence that Mr. Vernon committed an additional criminal act.[3]  *See* USSG §1B1.3(a)(1)(A); *see also Padilla*, 793 Fed. Appx. at 756 ("relevant information must have 'sufficient indicia of reliability to support its probable accuracy.'") (citing USSG §6A1.3(a)).  "The reliability floor is a requirement of due process.'"  *Id.* (citing *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013).

Here, no such specific, reliable, and admissible[4] evidence has been presented to support the inclusion of the methamphetamine. As a result, there is insufficient evidence

---

[3] USSG §1B1.3 also addresses acts and omissions that are aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant.  None of these acts apply to the present case.

[4] Additionally, the narcotics found in a truck parked on the street outside of the residence were illegally obtained.  The government sought and received a search warrant for the residence located at 4025 Jet Wing Place in Colorado Springs, Colorado.  In the search warrant, the government described the places to be searched, which included "vehicles present at the premises at the time of the search and which are associated to the occupants of the residence."  Law enforcement officers extended their authority to search beyond the residence and the curtilage of the residence in order to search a vehicle parked on a public street.  This is not allowed.  *See e.g. Collins v. Virginia*, 138 S. Ct. 1663, 1671 (2018) ("an area adjacent to the home and 'to which the activity of home life extends'" is considered curtilage).  For this additional reason, the evidence should not be considered by the Court in determining Mr. Vernon's sentence.

to attribute those narcotics to Mr. Vernon under USSG 1B1.3(a)(1)(A).  Therefore, there is no basis to enhance the guideline range beyond the base offense level of 26.

Paragraph 24: The probation department's enhancement for maintaining a premises also was in error.  The evidence presented by the probation department is not sufficient to impose the enhancement.

While manufacturing or distributing narcotics need not be the sole purpose for which the premises was maintained, it "must be one of the defendant's *primary or principal uses* for the premises, rather than one of the defendant's incidental or collateral uses for the premises."  USSG §2D1.1 – Application Note 17 (emphasis added).  The Court must consider "how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes."  *Id.*

For many reasons, the two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance should not be assessed here.  First, this residence was not a stash house; rather, Mr. Vernon lived there and was renting the residence.  Second, there has been no evidence presented to show how often, if at all, that Mr. Vernon used the premises to distribute narcotics.[5]   In order for the enhancement to apply, drug-related activity must be "frequent" and "substantial."  *See Murphy*, 901 F.3d at 1191 (citing *United States v. Henderson*, 604 Fed. Appx. 655, 658-59 (10th Cir. 2015)).  Incidental or collateral use is not sufficient.  *See United States*

---

[5] The Court must consider the frequency of unlawful vs. lawful activity at the premises. *See United States v. Murphy*, 901 F.3d 1185, 1191 (10th Cir. 2018).

*v. McDowell*, 804 Fed. Appx. 38, 40 (2nd Cir. 2020)  Third, there is little collateral evidence of distribution found inside the home, like baggies, proceeds, ledgers, etc.  The presence of a scale is just as necessary for a drug user as it is a drug distributor.  Fourth, the drug-related evidence found in the home was not found all over the home or in the open, it was either in a closet on a shelf or within the master bedroom.  Fifth, Mr. Vernon was employed at the time the search warrant was executed on his home, demonstrating that drug sales were not his exclusive means of income.  *See* Doc. 30 at ¶82 ("Prior to his arrest on the instant offense, the defendant was employed at Dr. Electric in Colorado Springs, Colorado, as an installer earning $20 per hour.")  Sixth, there was just as much evidence of drug use inside the home as drug distribution.  *See* Doc. 24 at p. 7 ("The parties agree that the methamphetamine found in the bedroom was for personal use and should not influence the guideline calculation.") (citing *United States v. Wilson*, 2021 WL 5183523 at *4 (10th Cir. 2021)).

As a result, while there was evidence of drug distribution at the residence, it was not one of the primary or principal uses for the premises.  Therefore, the two-level enhancement for maintaining a premises for manufacture or distribution of narcotics should not apply.

Paragraphs 28, 32, and 93: Based on the above objections, the guideline range should be:

>Total Offense Level: 26 (§2D1.1(c)(7) – 3 (§3E1.1) = 23;
>
>Criminal History Category: VI;
>
>Guideline Range = 92-115 months + 60 months (§2K2.4) = 152-175 months

**OBJECTIONS/CLARIFICATIONS THAT DO NOT IMPACT THE USSG RANGE BUT THAT MAY BEAR ON SENTENCING**

Paragraph 17: Mr. Vernon objects to two statements contained in this paragraph:

a) In May 2021, the [anonymous] Source of Information claimed to have seen approximately 1.5 pounds of methamphetamine, one kilogram of heroin and 600 blue pills, suspected to be fentanyl, along with several digital scales.

b) In June of 2021, a second source of information (SOI2) told law enforcement that he/she had been to defendant's residence and had seen two handguns at the residence.

This information is derived from unreliable hearsay and should not be considered by the Court in determining Mr. Vernon's sentence.  see Padilla, 793 Fed. Appx. at 756 ("relevant information must have 'sufficient indicia of reliability to support its probable accuracy.'"); see also United States v. Castillo-Torres, 8 F.4th 68, 71 (1st Cir. 2021) ("findings based solely on unreliable evidence cannot be established by a preponderance of the evidence and are therefore clearly erroneous.").  Both sources of information were described as drug users.  The identities of these persons has not been disclosed and their information was not corroborated, thus diminishing its reliability. See Florida v. J.L., 529 U.S. 266, 270 (2000).

Paragraph 54: Mr. Vernon admits that he pled guilty to the crime listed in this paragraph, but he denies the factual basis listed by the probation department.

WHEREFORE, undersigned counsel requests that the Court consider the aforementioned objections/clarifications in advance of the Sentencing Hearing.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/Timothy P. O'Hara
TIMOTHY P. O'HARA
Assistant Federal Public Defender
633 Seventeenth Street, Suite 1000
Denver, Colorado  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Email:  Timothy_OHara@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2022, I electronically filed the foregoing

**OBJECTIONS/CLARIFICATIONS TO
THE PRESENTENCE INVESTIGATION REPORT (PSIR) [DOC. 30]**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    Garreth Winstead
    Assistant U.S. Attorney
    Email:  Garreth.Winstead@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Mr. Matthew Vernon (U.S. Mail)

    s/*Timothy P. O'Hara*
    TIMOTHY P. O'HARA
    Assistant Federal Public Defender
    633 Seventeenth Street, Suite 1000
    Denver, Colorado  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    Email:  Timothy_OHara@fd.org
    Attorney for Defendant